# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRANDON CHRISHON POLK,           )
                                 )
              Plaintiff,          )
                                 )
       v.                        )            1:22CV174
                                 )
A. ALDRIDGE, III, et al,          )
                                 )
              Defendants.         )

## ORDER, MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on several motions, including Plaintiff Brandon Chrishon Polk's motion to add a party (Docket Entry 21), Defendants A. Aldridge, III, D.B. Evans, and O.C. Harrington's (collectively "Defendants") motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docket Entry 23), Plaintiff's request for a deposition hearing (Docket Entry 27), Defendants' motion for summary judgment (Docket Entry 31), and Plaintiff's request for a final pretrial conference (Docket Entry 35). Defendants filed a response in opposition to Plaintiff's motion to add a party and request for a deposition hearing. (Docket Entries 22, 28.) Plaintiff did not respond to Defendants' motion for judgment on the pleadings, however, Plaintiff filed a response in opposition to Defendants' motion for summary judgment. (Docket Entry 33.) For the following reasons, the undersigned recommends that Plaintiff's motion to add a party be denied, that Defendants' motion for judgment on the pleadings be denied as moot, and that

Defendants' motion for summary judgment be granted. Further, Plaintiff's request for a deposition hearing, and for a final pretrial conference will be denied.

## I. BACKGROUND

Plaintiff, a *pro se* prisoner proceeding *in forma pauperis*, initiated this action pursuant to 42 U.S.C. § 1983 on March 3, 2022. (Compl., Docket Entry 2; *see also* Docket Entries 1, 3, 7.)[1] In the Complaint, Plaintiff contends that Defendants, employed by the Albemarle Police Department, in their individual and official capacities violated his constitutional rights by, *inter alia*, participating in the "wrongful acts" against him after being aware of his innocence and they continued to prosecute him in violation of the Fourth Amendment by engaging in malicious prosecution. (*See generally* Compl.)[2]

Specifically, Plaintiff alleges that on September 7, 2018, Defendant Aldridge and Defendant Evans pulled him over for crossing over the yellow lines. (Compl. at 5, 14.) Defendant Aldridge then called in Plaintiff's license and requested a K-9 unit to search Plaintiff's vehicle. (*Id.* at 14.) After a few minutes, Defendant Aldridge returned to Plaintiff's vehicle and accused Plaintiff of swallowing drugs. (*Id.*) Defendant Aldridge then asked Plaintiff to step out and gave Plaintiff a pat search. (*Id.*) Even though nothing was found during the search, Defendant Evans handcuffed Plaintiff. (*Id.*) While Plaintiff was being handcuffed, he informed Defendants Aldridge and Evans that he did not want them to search

---

[1] Unless otherwise noted, all citations in this order and recommendation to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

[2] Plaintiff also named several other individuals as defendants and alleged other claims; however, those individuals and claims were dismissed. (*See* Docket Entries 3, 6, 7.) He also named a "John Doe" who Plaintiff describes as the "white shirt officer" and asserted a negligence claim against that defendant, which was dismissed. (*Id.*)

2

his vehicle because he was only pulled over for a traffic ticket. (*Id.*) However, Defendant Aldridge ignored his request and started searching the front area of Plaintiff's vehicle. (*Id.*)

Thereafter Defendant Harrington arrived with a K-9 unit along with a "white shirt officer" in a separate vehicle. (*Id.* at 15.) Upon arriving, Defendant Aldridge approached both officers and informed them that he saw Plaintiff put "some drugs" in his mouth when Plaintiff was blue-lighted and that he wanted a search done with the K-9 unit. (*Id.*) Plaintiff then asked Defendant Aldridge "how you figure that I put drugs in my mouth and you in whole other car?" (*Id.*) Defendant Aldridge turned around and told Plaintiff to "shut the hell up." (*Id.*) Defendants Harrington and Aldridge walked the K-9 around Plaintiff's vehicle, while the "white shirt officer" stood outside of another vehicle to monitor the search. (*Id.*) After walking around Plaintiff's vehicle, the K-9 showed no signs that it alerted. (*Id.*) However, Defendant Aldridge informed the "white shirt officer" that the dog had alerted on the far-right side, and they were going to proceed with searching inside the vehicle. (*Id.* at 15-16.)

Plaintiff then walked over to the "white shirt officer," told him that the dog did not alert, and asked him how did the dog show that it alerted. (*Id.* at 16.) The "white shirt officer" shrugged and told Plaintiff to just let the officers go ahead and search. (*Id.*) Then Defendants Aldridge and Harrington went into Plaintiff's vehicle for about a five minutes, wherein nothing was found. (*Id.*) After the search was completed, the "white shirt officer" returned to his vehicle to leave, but Plaintiff informed this officer that he did not feel safe being left alone with Defendants, and asked him not to leave until Defendants let him go. (*Id.*) The "white shirt officer" acknowledged that nothing was found and stated that they were going to let Plaintiff go free. (*Id.*) This "white shirt officer" also ordered Defendant Evans to remove

3

Plaintiff's handcuffs. (*Id.*) The "white shirt officer" then left and Defendant Aldridge told Defendant Evans and Harrington that he wanted to search Plaintiff's vehicle again. (*Id.*) Defendant Aldridge then grabbed the K-9 leash from Defendant Harrington and led the dog around Plaintiff's vehicle again with Defendant Harrington walking behind them. (*Id.*) After about three minutes, the officers finished the search, and Defendant Aldridge came out with his "hand out flat" and told Defendant Evans that he found cocaine under the driver's seat. (*Id.* at 17.) Plaintiff asked to see what Defendant Aldridge had in his hand and Defendant Aldridge told Plaintiff that he did not have to "show [him] shit." (*Id.*) Defendant Aldridge ordered Defendant Evans to handcuff Plaintiff again, which Defendant Evans did. (*Id.*) Plaintiff was then taken to the jail and issued a $2,500 bond for possession of cocaine. (*Id.*)

As a result of this "situation," Plaintiff suffered many problems due to Defendants lying about finding cocaine based drugs under his driver seat, such as having to pay to get his vehicle from the tow service, going to jail, paying a $2,500 bond, obtaining an attorney to represent him on the drug charge, and he "started back selling drugs" to pay for an attorney, which caused Plaintiff to "get in more trouble and get more charges." (*Id.* at 5, 17, 18.) Thereafter, Defendant Evans made the police report for those charges, and nothing mentioned the "white shirt officer" or the search that happened while that officer was present. (*Id.* at 18.) However, on February 26, 2021, the charges were dismissed as Plaintiff was indicted for federal charges. (*Id.*) For relief, Plaintiff seeks, *inter alia*, damages. (*Id.* at 5, 25.)

Upon the Court conducting a 28 U.S.C. § 1915A review, only Plaintiff's malicious prosecution claim was allowed to proceed against Defendants and discovery commenced. (Docket Entries 3, 6, 7, 19.) Plaintiff then filed a document seeking to add to the malicious

4

prosecution claim Officer G.V. Frazee, who Plaintiff describes in the Complaint as "John Doe" and the "white shirt officer," as he alleges Officer G.V. Frazee was the "supervising officer" who was responsible for the actions of the employees of the Albemarle Police Department. (*See* Docket Entry 21.) Defendants filed a response in opposition. (Docket Entry 22.) Subsequently, Defendants filed a motion for judgment on the pleadings and a supporting brief. (Docket Entries 23, 24.) The Clerk of Court issued a *Roseboro* letter to Plaintiff advising him of his right to respond to Defendants' motion for judgment on the pleadings. (*See* Docket Entry 25.) Plaintiff has not responded as of today's date.

Subsequently, Plaintiff filed a document requesting a deposition hearing (Docket Entry 27), which Defendants opposed (Docket Entry 28). Defendants then filed a motion for summary judgment and supporting brief. (Docket Entries 31, 32.) Plaintiff filed a response in opposition to Defendants' motion for summary judgment. (Docket Entry 33.) Lastly, Plaintiff filed a request for a final pretrial conference. (Docket Entry 35.)

## II. DISCUSSION

### A. Plaintiff's Motion Requesting to Add a Party

Plaintiff filed a motion requesting to add Officer G.V. Frazee, in his official and individual capacity, as a defendant for his malicious prosecution claim. (*See* Docket Entry 21.) Plaintiff states that he describes Officer G.V. Frazee in the Complaint as the "white shirt officer" and "John Doe." (*Id.*) He further alleges that Officer G.V. Frazee was present during some of the events that occurred on September 7, 2018, and that Officer G.V. Frazee is employed as a supervising officer and is responsible for the unlawful actions and activity of Defendants. (*Id.*) Defendants oppose Plaintiff's motion arguing, *inter alia*, that Plaintiff has

5

failed to state a malicious prosecution claim against Officer G.V. Frazee; and that any claim against Officer G.V. Frazee under a *respondeat superior* theory should be dismissed. (*See* Docket Entry 22.)

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Additionally, "[t]he court should freely give leave when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). However, "[a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). "A proposed amendment qualifies as futile if it would not survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted." *Clinton v. Slagle*, No. 1:20CV1078, 2022 WL 1229926, at *3 (M.D.N.C. Apr. 26, 2022) (unpublished) (citations omitted). A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Pro se* complaints are to be liberally construed in assessing sufficiency under the Federal Rules of Civil Procedure. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this liberal construction, "generosity is not fantasy," and the

6

Court is not expected to plead a plaintiff's claim for him. *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998).[3]

Plaintiff's motion requesting to add Officer G.V. Frazee as a defendant in the malicious prosecution claim should be denied as futile. First, to the extent Plaintiff attempts to add Officer G.V. Frazee simply to hold him liable under § 1983 due to being Defendants supervisor, such a claim fails. *See Chennault v. Mitchell*, 923 F.Supp.2d 765, 786 (E.D. Va. 2013) ("Supervisory officials are not held liable for the constitutional injuries of their subordinates under a theory of *respondeat superior*."). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *McDougald v. Spinnato*, No. ELH-17-2898, 2019 WL 1226344, at *15 (D. Md. Mar. 15, 2019) (unpublished) (citation omitted). Thus, Plaintiff must allege that Officer G.V. Frazee through his own actions violated Plaintiff's Fourth Amendments rights.

The Fourth Circuit has held that "there is no such thing as a '§ 1983 malicious prosecution' claim." *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000). Further, "§ 1983 does not empower a plaintiff to bring a claim for malicious prosecution *simpliciter*. What is conventionally referred to as a '§ 1983 malicious prosecution' action is nothing more than a § 1983 claim arising from a Fourth Amendment violation." *Id.* at 260. To state such a Fourth Amendment claim, the Fourth Circuit has required a plaintiff to allege that (1) the defendant

---

[3]The undersigned notes that Plaintiff failed to comply with this Court's Local Rule 15.1, which requires parties to "attach the proposed amended pleading to the motion" seeking leave to amend such pleading. M.D.N.C. LR 15.1. Nonetheless, it appears from Plaintiff's motion that he intends to add Officer G.V. Frazee as a defendant in Plaintiff's malicious prosecution claim as he is the "white shirt officer" and the John Doe in the Complaint. (*See* Docket Entry 21.)

seized plaintiff pursuant to a legal process that was not supported by probable cause and (2) that the criminal proceedings terminated in plaintiff's favor. *Massey v. Ojaniit*, 759 F.3d 343, 356 (4th Cir. 2014) (citation omitted). The Supreme Court has further explained that a "Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022).[4]

Here, the undersigned first notes that Plaintiff sufficiently alleges that the criminal proceedings terminated in his favor because the criminal charges ended without a conviction, as he alleges the drug charges related to the September 7, 2018 incident were dismissed due to Plaintiff being indicted for federal charges. (Compl. at 17-18.) However, even substituting Officer G.V. Frazee for the "white shirt officer" in the Complaint, Plaintiff nonetheless fails to allege sufficient facts indicating that Officer G.V. Frazee seized Plaintiff pursuant to a legal process that was not supported by probable cause. Specifically, the allegations pertaining to Officer G.V. Frazee indicate that while he was present at the time the first search of Plaintiff's vehicle was conducted, Officer G.V. Frazee acknowledged that nothing was found in Plaintiff's vehicle, ordered Defendant Evans to remove Plaintiff's handcuffs, and told Plaintiff that Defendants were going to let him "go free." (Compl. at 15-16.) As such Plaintiff does not demonstrate that Officer G.V. Frazee played a role in seizing him based on the subsequent

---

[4]The undersigned notes that "[s]ome courts require a showing of malice as a fifth element. The Fourth Circuit has rejected malice as an element to a Fourth Amendment 'malicious prosecution' claim." *Snider v. Seung Lee*, 584 F.3d 193, 203 n.1 (4th Cir. 2009).

drug charges, as he was not present at that time, and he had otherwise ordered Plaintiff to be released. Thus, Plaintiff's motion requesting to add a party should be denied.

### B. Plaintiff's Request for a Deposition Hearing

Plaintiff requests for the Court to conduct depositions of Defendants and Officer G. Frazee, as he would like to have their testimony "for evidence" regarding the September 7, 2018 traffic stop and arrest, and specifies the information he would like provided at the depositions. (Docket Entry 27.) Defendants oppose Plaintiff's request. (Docket Entry 28.) The undersigned notes that other courts prefer that "*pro se* prisoner plaintiffs use interrogatories and discovery requests, rather than depositions, in obtaining discovery from other parties, due to safety concerns for the North Carolina Department of Public Safety." *Pickens v. Lewis*, No. 1:15CV275, 2017 WL 2198342, at *2 (W.D.N.C. May 18, 2017) (unpublished); *see also Muhammad v. Bunts*, No. 1:03CV228, 2006 WL 8442090, at *3 (N.D.W. Va. Oct. 2, 2006) (unpublished) (noting that while prisoners have a right to take discovery, a court has found that such a right did not necessarily include the right to take oral depositions when there are compelling reasons weighing against such depositions if the inmate is able to obtain the necessary information by written discovery; one compelling reasons for denying such a request is the disruption of prison administration).

"Furthermore, Plaintiff has not shown that he can afford to pay for the costs of a court reporter or witness fees, as he is required to do despite the fact that he is proceeding *in forma pauperis*." *Pickens*, 2017 WL 2198342, at *2; *see also Hughes v. Propst*, No. 1:21CV164, 2022 WL 989460, at *2 (W.D.N.C. Apr. 1, 2022) (unpublished) ("Civil litigants, including *pro se* litigants, generally bear their own deposition costs . . . There is no provision in the [IFP] statute for the

payment by the government of the costs of deposition transcripts, discovery costs, or any other litigation expenses, and no other statute authorized courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant.") (citations omitted). The undersigned thus concludes that the possible safety concerns presented by Plaintiff conducting depositions of Defendants and Officer G. Frazee coupled with Plaintiff failing to show he can afford the costs of conducting depositions weighs heavily against Plaintiff's request. For these reasons, Plaintiff's request for depositions of Defendants and Officer G. Frazee is denied.

### C. Defendants' Motion for Summary Judgment

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence

or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49.

Defendants contend that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law regarding Plaintiff's malicious prosecution claim. (Docket Entries 31, 32.) Plaintiff objects to Defendants' motion for summary judgment contending that he did not cross the double yellow lines while driving, that Defendants arrested him without testing the two "small pieces of drugs" they found; that Defendants did not state how the K-9 alerted or that the K-9 alerted on the driver side of the vehicle, and that Officer G.V. Frazee is a credible witness that can testify regarding Plaintiff's innocence. (*See* Docket Entry 33.)[5] However, the undersigned notes that Plaintiff has not submitted any evidence to oppose Defendants' motion for summary judgment, such that he merely relies on

---

[5]Defendants also argue, in their reply brief only, that they are entitled to qualified immunity in their individual capacities. (*See* Docket Entry 34.) However, given that the undersigned finds other grounds for granting Defendants' motion for summary judgment, the undersigned need not further address Defendants' arguments pertaining to qualified immunity. *See Carter v. White*, No. 6:07-3481-GRA-WMC, 2008 WL 4861648, at *3 (D.S.C. Nov. 7, 2008) (unpublished) ("A court need not address a claim for qualified immunity unless the underlying constitutional claim is first established.").

11

the allegations in the Complaint, which is insufficient. *See Evans*, 80 F.3d at 962; *see also Anderson*, 477 U.S. at 248-49; *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) ("A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must "set forth specific facts showing that there is a genuine issue for trial.'") (citations omitted).

As previously stated, a "'§ 1983 malicious prosecution' is nothing more than a § 1983 action arising from a Fourth Amendment violation." *Lambert*, 223 F.3d at 260. To state such a Fourth Amendment claim, the Fourth Circuit has required a plaintiff to show that (1) the defendant seized plaintiff pursuant to a legal process that was not supported by probable cause and (2) that the criminal proceedings terminated in plaintiff's favor. *Massey*, 759 F.3d at 356.

At the outset, the undersigned notes that a "claim for false arrest alleges that a warrantless arrest lacked probable cause; a claim for malicious prosecution alleges that an arrest made pursuant to a warrant lacked probable cause." *Smith v. Munday*, 848 F.3d 248, 257 (4th Cir. 2017). "Malicious prosecution and false arrest are related, but distinct claims." *Wilson v. Town of Mount Jackson*, No. 5:21CV55, 2022 WL 819531, at *5-6 (W.D. Va. Mar. 17, 2022) (unpublished). Nevertheless, "the two claims are complimentary." *Id.* "For example, when officers wrongly arrest a plaintiff without a warrant, a plaintiff can appropriately sue for false arrest . . . . [a]nd if those same officers later have the plaintiff charged by a magistrate, a malicious prosecution claim allows plaintiff to recover damages accrued from that point forward." *Id.* at 6. "Functionally, whether pleaded independently or in combination, each is 'properly understood as a Fourth Amendment claim for unreasonable seizure.'" *Id.* (citing *Lambert*, 223 F.3d at 261-62). Thus, a finding that an officer had probable cause at the time

of plaintiff's arrest would require the court to dismiss plaintiff's Fourth Amendment claims. *Wilson*, 2022 WL 819531, at *6; *see also Gerald v. Greene*, No. RDB-17-3737, 2019 WL 430854, at *5 (D. Md. Feb. 1, 2019) (unpublished) (noting that a plaintiff must allege facts demonstrating that he was arrested without probable cause to state a claim for false arrest or malicious prosecution under § 1983).[6]

"The Fourth Amendment protects against unreasonable seizures, and a traffic stop constitutes a seizure within the meaning of the Fourth Amendment." *Freeland v. Simmons*, No. 4:09CV01384, 2012 WL 258105, at *5 (D.S.C. Jan. 27, 2012) (unpublished). As such, the traffic stop must be reasonable. *Id.* "A traffic stop is constitutionally reasonable when an officer either has 'probable cause to believe that a traffic violation has occurred,' . . . or a reasonable suspicion that criminal activity may be afoot." *Id.* (citations omitted); *see also Hays v. Town of Gauley Bridge*, No. 2:09-1272, 2011 WL 1229797, at *3 (S.D.W.Va. Mar. 29, 2011) (unpublished) ("A stop supported by a reasonable suspicion of even the most mundane traffic infractions is constitutionally permissible."). "[O]nce a vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Graham v. Charlotte Mecklenburg Police Dep't*, No. 3:14CV392, 2015 WL 6133056, at *3

---

[6]The Court notes that Plaintiff's malicious prosecution claim is the only claim that remains. (*See* Docket Entries 6, 7.) However, given that the Complaint indicates that Plaintiff was arrested without a warrant and Plaintiff takes issue with that, his claim may be more properly construed as a false arrest claim. (*See generally* Compl.) In any event, as discussed herein the evidence fails to support any Fourth Amendment claim related to an alleged unlawful seizure, given that Defendants had probable cause to arrest Plaintiff, such that any potential false arrest claim also fails.

(W.D.N.C. Oct. 19, 2015) (unpublished) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977)).

The courts assess the constitutionality of a traffic stop under the two-prong standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *See United States v. Palmer*, 820 F.3d 640, 648 (4th Cir. 2016). First, the courts assess whether the articulated bases for the traffic stop were legitimate, and second, whether the actions of the authorities during the traffic stop were "reasonably related in scope" to the basis for the seizure. *Id.* at 648-49 (citations omitted). The first prong is satisfied "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation," and such a violation may include failure to comply with traffic laws. *Id.* (citations omitted). As to the second prong, it restricts the range of permissible actions that a police officer may take after initiating a traffic stop, such that an officer is entitled to conduct safety-related checks. *Id.*

However, an officer's focus must remain on the bases for the traffic stop, and an officer cannot investigate a "matter outside the scope of the initial stop" unless he receives the motorist's consent or develops reasonable, articulable suspicion of ongoing criminal activity. *Id.* at 649-50. "Reasonable suspicion is a 'commonsense, nontechnical' standard that relies on the judgment of experienced law enforcement officers, 'not legal technicians.'" *Id.* at 650 (citation omitted). "To support a finding of reasonable suspicion, [the Fourth Circuit] require[s] the detaining officer 'to either articulate either why a particular behavior is suspicious or logically demonstrate, given the surrounding circumstances, that the behavior is likely to be indicative of some more sinister activity than may appear at first glance." *Petty v. Byers*, No. 1:16CV237, 2017 WL 870468, at *8 (W.D.N.C. Feb. 1, 2017) (citing *United States v. Foster*, 634

14

F.3d 243, 248 (4th Cir. 2011), *report and recommendation adopted*, 2017 WL 872648 (W.D.N.C. Mar. 3, 2017) (unpublished)).  Courts "must look at the totality of the circumstances of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citation omitted).  However, "the possibility that a dog sniff might reveal drug possession is not— absent a showing of reasonable, articulable suspicion—a valid basis for extending a traffic stop." *United States v. Williams*, 808 F.3d 238, 247 (4th Cir. 2015).

"[A]lthough an officer may extend a traffic stop when he possesses reasonable suspicion, he cannot search the stopped vehicle unless he obtains consent, secures a warrant, or develops probable cause to believe that the vehicle contains evidence of criminal activity." *Palmer*, 820 F.3d at 650.  Probable cause can be established through a trained drug dog's alert on the vehicle.  *Id.*; *see also United States v. McCauley*, No. 1:13CR423-1, 2014 WL 12639125, at *6 (M.D.N.C. Jan. 23, 2014) (unpublished) (noting that the law is settled that a K-9's alert provides probable cause to conduct a search; collecting cases).  Thus, a K-9 alert establishes probable cause to seize a vehicle and conduct a warrantless search.  *See Brooks v. Doughtie*, No. 2:15CV23, 2017 WL 3880857, at *5 (E.D.N.C. Aug. 31, 2017) (unpublished) (collecting cases).

The Fourth Amendment's prohibition against unreasonable seizures also applies to arrests, and the warrantless arrest of an individual in a public place must be supported by probable cause.  *Freeland*, 2012 WL 258105, at *5.  "Evaluating whether an officer had probable cause for an arrest requires consideration of the totality of the circumstances known to the officer at the time of the arrest." *Id.*  A finding of probable cause to arrest is proper when "at the time the arrest occurs, the facts and circumstances within the officer's knowledge would

warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *United States v. Garcia*, 848 F.2d 58, 59-60 (4th Cir. 1988). "Two factors govern the determination of probable cause in any situation: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Xuli Zhang v. Regan*, No. 1:10CV1329, 2011 WL 3652382, at *4 (E.D. Va. Aug. 17, 2011) (unpublished). "While probable cause requires more than mere suspicion, evidence sufficient to convict the arrestee of the offense is not required." *Freeland*, 2012 WL 258105, at *6; *see also Durham v. Horner*, 690 F.3d 183, 190 (4th Cir. 2012) (noting that for probable cause to exist evidence sufficient to convict is not required). Furthermore, the ultimate dismissal of the charges or an acquittal does not suggest that the arrest was made without probable cause. *Freeland*, 2012 WL 258105, at *6.

Here, the undersigned concludes that there is no genuine issue of material fact because the evidence shows that no Fourth Amendment violation occurred as the traffic stop, K-9 sniff of Plaintiff's vehicle, search of the vehicle, and Plaintiff's arrest were proper. First, as to the traffic stop, Defendant Aldridge and Evans stated in their affidavits that they observed Plaintiff's vehicle cross double yellow lines with both driver side tires and that failing to maintain a lane is a traffic violation. (Docket Entries 32-2, 32-3.)[7] Defendants Aldridge and

---

[7]Plaintiff also argues that Defendants' motion for summary judgment should be denied because the motion relates to a traffic stop that occurred on September 14, 2018, which is not the date of the traffic stop alleged in the Complaint. (*See* Docket Entry 33.) However, Defendants explain that the references to September 14, 2018 were typographical errors and agree that the stop and arrest of Plaintiff occurred on September 7, 2018. (*See* Docket Entry 34.) The undersigned further notes that Defendants' affidavits also use the incorrect September 14, 2018 date. (*See* Docket Entries 32-2, 32-3, 32-4.) However, it appears that the date in Defendants' affidavits were a typographical error and this error does not raise an issue of material fact and therefore does not impact the determination of Defendants' motion for summary judgment. *See Brooks v. Golden*, No.6:06-1234, 2007 WL 2688603, at *2 n.1 (D.S.C. Sept. 11, 2007) (unpublished) (noting that it appeared the incorrect date in

Evans decided to conduct a traffic stop due to the traffic violation. (*Id.*) While pulling over Plaintiff's vehicle, Defendants Aldridge and Evans observed Plaintiff moving around and saw him place something in his mouth. (*Id.*) Defendant Aldridge then approached the driver side of the vehicle and identified Plaintiff. (Docket Entry 32-3.) Defendant Aldridge asked for Plaintiff's driver's license and for Plaintiff to open his mouth, but Plaintiff swallowed then opened his mouth. (*Id.*) In Defendant Aldridge and Evans's experience, suspects in possession of illegal narcotics will often swallow illegal substances in an effort to conceal the substances from an officer. (Docket Entries 32-2, 32-3.) Defendant Aldridge then asked Plaintiff to step out of the vehicle and stand near the rear of the vehicle, wherein Defendant Aldridge conducted a pat down of Plaintiff. (*Id.*)

The undersigned concludes that the undisputed evidence shows that the traffic stop was reasonable given that both Defendants Aldridge and Evans observed Plaintiff's vehicle cross over the double yellow lines with both driver side tires, which is a traffic violation in North Carolina. *See* N.C. Gen. Stat. § 20-146; *see also State v. Sutton*, 259 N.C. App. 891, 893, 817 S.E.2d 211, 213 (2018) ("Where a vehicle actually crosses over the double yellow lines in the center of a road, even once, and even without endangering any other drivers, the driver has committed a traffic violation . . . ."). Furthermore, Defendant Aldridge ordering Plaintiff to step out of the vehicle was permitted, given that Plaintiff's vehicle had been lawfully detained for a traffic violation.

---

Defendant's affidavit was a typographical error and that error did not raise an issue of material fact and therefore did not impact the court's determination of defendants' motion for summary judgment), *aff'd*, 268 F. App'x 217 (4th Cir. 2008).

Next, the evidence, i.e., Defendants affidavits, demonstrate that based on the totality of the circumstances, Defendant Aldridge and Evans had reasonable suspicion of ongoing criminal activity to extend the traffic stop to wait for a K-9 unit to arrive and assist. Specifically, the particularized and objective circumstances that indicated to Defendants Aldridge and Evans that sinister activity could be taking place was as follows: (1) on the date of the incident, they observed Plaintiff pull into the driveway of a residence where several complaints had previously been made regarding narcotic transactions being conducted; (2) while Plaintiff was parked in that residence, another male approached Plaintiff and conducted what appeared to be a possible "hand to hand transaction"; (3) Plaintiff had previously been arrested for charges related to the possession of illegal narcotics; (4) while pulling Plaintiff over, they observed Plaintiff place something in his mouth; and (5) when Defendant Aldridge asked Plaintiff to open his mouth, Plaintiff swallowed then opened his mouth. (Docket Entries 32-2, 32-3.) Therefore, considering the totality of the circumstances, the undersigned concludes that Defendants Aldridge and Evans had reasonable suspicion, based on articulable facts, to extend the traffic stop and wait for a K-9 unit to arrive at the scene. *See e.g., United States v. Alexander*, 528 F. App'x 515, 519 (6th Cir. 2013) (concluding that officers testifying that they observed what they believed to be two hand-to-hand drug transactions and the individual being parked next to gas pump but not purchasing gas, taken together with the officers' rational inferences, supported the district court's finding that the officer had reasonable suspicion of drug activity that justified the traffic stop; noting that hand-to-hand transactions consistent with drug transactions are "highly probative" in evaluating reasonable suspicion) (citation omitted); *Allen v. Thompson*, 14 F.Supp.3d 885, 892-93 (W.D. Ky. 2014)

18

(finding that based on the totality of the circumstances the defendants had reasonable suspicion, based on articulable facts, to detain plaintiff on suspected drug activity; the relevant factors were, *inter alia*, that plaintiff was stopped in a high crime area, plaintiff's vehicle had just visited a house where narcotics activity was suspected, plaintiff had entered the house only a short time, and plaintiff had a lengthy criminal record, including a recent charge for cocaine trafficking).

As to the search of Plaintiff's vehicle, the undersigned concludes that there is no genuine issue of material fact that the search of the vehicle was supported by probable cause. Defendant Harrington states in his affidavit that on the relevant date his K-9 was a certified drug canine and that he is the only one who handles the K-9 unit. (Docket Entry 32-4.) He also states that he walks his K-9 unit around a vehicle and then notifies officers if the K-9 alerts. (*Id.*) Defendants Aldridge and Evans state in their affidavits that when Defendant Harrington walked his K-9 around Plaintiff's vehicle, Defendant Harrington advised that the K-9 had alerted on the vehicle. (Docket Entries 32-2, 32-3.) As previously stated herein, a K-9 alert in itself establishes probable cause to seize a vehicle and conduct a warrantless search. *See Brooks*, 2017 WL 3880857, at *5. Thus, the evidence shows that the search of Plaintiff's vehicle was not a constitutional violation.

Lastly, as to Plaintiff's arrest, the undersigned concludes that there is no genuine issue of material fact that Defendants had probable cause to arrest Plaintiff, given that Defendants affidavits indicate that when Defendant Aldridge conducted a search of the vehicle, after the K-9 alerted, he located two pieces of crack cocaine under the driver's seat. (Docket Entries 32-2, 32-3.) While Defendant Harrington states in his affidavit that he does not have an

independent recollection of the events that transpired on the relevant date, he nonetheless states that he has never placed any illegal substances on a suspect or in a suspect's vehicle, and that he can "say with certainty that [he] did not place any illegal substances on [Plaintiff] or in his vehicle." (*See* Docket Entry 32-4.) Defendants Aldridge and Evans also state in their affidavits that they did not place any illegal substances at the scene or on Plaintiff. (Docket Entries 32-2, 32-3.) The evidence here thus shows that crack cocaine was found under Plaintiff's seat, he had been observed partaking in what appeared to be a "hand to hand" transaction in the driveway of a residence which had complaints of narcotic transactions, he had previously been arrested for charges related to the possession of illegal narcotics, and when pulled over Plaintiff was observed putting something in his mouth and swallowing before opening his mouth to show Defendant Aldridge. (*See* Docket Entries 32-2, 32-3.) Thus, the undersigned concludes that based on the totality of the circumstances Defendants had probable cause to arrest Plaintiff for possession of crack cocaine on September 7, 2018. As such, Plaintiff's individual capacity Fourth Amendment claims for malicious prosecution fail.[8]

*A. Official Capacity Claims*

Defendants also contend that the official capacity claims against them are improper, unnecessary, and thus subject to dismissal. (Docket Entry 32.) A plaintiff suing government

---

[8]Defendants admittedly explain that Plaintiff's criminal prosecution as it relates to these charges ended without a conviction, thus satisfying the second element as defined by the Supreme Court in *Thompson*. (*See* Docket Entry 32.) Nevertheless, Defendants contend that Plaintiff is unable to show the criminal proceedings terminated in his favor by trying to distinguish the facts in the *Thompson* case. (*Id.*) However, the undersigned need not address this argument, given Defendants admission that Plaintiff satisfies the second element of a malicious prosecution claim, and in any event, the undersigned concludes that Plaintiff's claim fails on other grounds as discussed herein.

20

officials in their official capacities, "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). However, a governmental entity is only liable if a policy or custom of that entity played a part in the violation of federal law. *Pratt-Miller v. Arthur*, 701 F. App'x 191, 193 (4th Cir. 2017) (unpublished per curiam). In keeping with these principles, Plaintiff's official-capacity claims against Defendants are actually claims against the Albemarle Police Department. (*See* Compl.) However, Plaintiff has proffered no facts or any evidence to suggest that the alleged Fourth Amendment violations occurred as a result of a policy or custom of the Albemarle Police Department. (*See* Compl.; Docket Entry 33.) Thus, the claims against Defendants in their official capacities should be dismissed.

Accordingly, the undersigned recommends granting Defendants' motion for summary judgment.

## D. Remaining Motions

Defendants also filed a motion for judgment on the pleadings. (*See* Docket Entry 23.) Additionally, Plaintiff filed a document, requesting a final pretrial conference. (*See* Docket Entry 35.) Given that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned recommends denying as moot Defendants' motion for judgment on the pleadings, *see Hayes v. Minaj*, No. 2:12CV07972, 2013 WL 11328453, at *1 (C.D. Cal. Mar. 7, 2013) (unpublished) (granting motion for summary judgment and denying as moot motion for judgment on the pleadings); and denying as moot Plaintiff's motion for a final pretrial conference.

21

## III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for a Deposition Hearing (Docket Entry 27) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion Requesting a Final Pretrial Conference (Docket Entry 35) is **DENIED AS MOOT**.

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion to Add Party (Docket Entry 21) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendants A. Aldridge, III, D.B. Evans, and O.C. Harrington's Motion for Judgment on the Pleadings (Docket Entry 23) be **DENIED AS MOOT**.

**IT IS FURTHER RECOMMENDED** that Defendants A. Aldridge, III, D.B. Evans, and O.C. Harrington's Motion for Summary Judgment (Docket Entry 31) be **GRANTED**.

Joe L. Webster
United States Magistrate Judge

August 10, 2023
Durham, North Carolina

22